Sam ROGERS

v.

The KROGER COMPANY.

Civ. A. No. H–78–840.

United States District Court, S.D. Texas, Houston Division.

May 7, 1984.

See also, 5 Cir., 669 F.2d 317.

Clementine Hannah, Houston, Tex., for plaintiff.

Victoria Corcoran, Bracewell & Patterson, Houston, Tex., for defendant.

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is defendant's motion for attorney's fees. Specifically, defendant contends that it, as the prevailing party, is entitled to $70,212.50 in attorney's fees because of plaintiff's deliberate delays and purposefully dilatory conduct in the prosecution of this civil rights action. Plaintiff's counsel, failing to comply with the Court's Order of October 31, 1983, has provided no responsive facts or legal authority to defend herself or her client in this action for attorney's fees. After careful consideration of defendant's memoranda, the other documents within the record, and the relevant case law, the Court is of the opinion that defendant's counsel should be awarded attorney's fees in the amount of $16,500.00 for the reasons discussed below.

## Introduction

Plaintiff filed this action on May 8, 1978, alleging that he was denied equal employment opportunity by defendant because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Since its filing, this cause has suffered from a serpentine and protracted procedural history containing multiple extensions to prepare for trial, repeated incidents wherein plaintiff's counsel untimely filed or completely failed to file essential pleadings, and two incidents where upon the day of trial, plaintiff's counsel refused to prosecute her client's claims against the defendant. Rarely, if ever, has this Court witnessed such unprofessional conduct and incompetence on the part of a practicing attorney in federal court.

Throughout its history, this cause has been dismissed with prejudice twice for failure to prosecute, and plaintiff has had costs assessed against him at the instance of the second dismissal and double costs assessed against him upon the dismissal of his second appeal. In addition, a total of $1,268.00 was levied against plaintiff's counsel as sanctions to be paid to defendant as reparations for her conduct during the September, 1980 proceeding. Defendant now seeks attorney's fees pursuant to 42 U.S.C. §§ 1988, 2000e–5(k), and 28 U.S.C. § 1927.

## The Law
### I.

Defendant first requests an award of $70,212.50 in attorney's fees pursuant to 42 U.S.C. § 1988 and 2000e–5(k). Those statutes provide, in relevant part:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ...

42 U.S.C. § 2000e–5(k).

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988.

■ The language of the 1964 Civil Rights Act, while stating seemingly identical standards for the award of fees to both plaintiffs and defendants, has not been identically interpreted. *Christianburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Prevailing plaintiffs are to recover in all but special circumstances, defendants only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christianburg Garment,* 434 U.S. at 421, 98 S.Ct. at 700. The Congressional intent in permitting awards to civil-rights defendants was "to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420, 98 S.Ct. at 699.

■ However, to assess "attorney's fees against plaintiffs simply because they do not finally prevail ... would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Id.* at 422, 98 S.Ct. at 700. The Court noted:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most air tight claims ... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421–422, 98 S.Ct. at 700. Thus, *Christianburg Garment* makes it clear that an award of attorney's fees to a prevailing defendant depends on whether plaintiff had a colorable claim and not whether he pursued that claim in good faith.

Defendant cites *Equal Employment Opportunity Commission v. Data Point Corp.*, 457 F.Supp. 62 (W.D.Tex.1978), as a case, analogous to the one *sub judice*, which supports its request for an award of attorney's fees. However, in that lawsuit, unlike the case at bar, there was a trial on the merits at which time the defendant made affirmative evidentiary showings that it had not violated Title VII with respect to any of its employment practices at any relevant time. *Id.* at 66. Moreover, during the course of discovery, defendant deposed various officials of the EEOC who had apparent authority to decide whether the litigation should continue. No ostensibly responsible official of the EEOC was aware of the factual basis of the suit. In addition, even the Chief of the EEOC Trial Division nationwide, who was responsible for prosecuting the case, "could not testify to a single fact or circumstance, real or suspended, to support the Commission's claims." *Id.* at 65, 66, n. 10. In contrast to *Data Point* is the case at bar which never reached a trial on the merits.

The Fifth Circuit has stated recently that a dismissal for want of prosecution alone is adequate as a basis for an attorney's fee award, provided the record independently supports the findings required by *Christianburg Garment*. *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287 (5th Cir.1983), *aff'd in part, vacated and remanded in part*, 722 F.2d 209 (5th Cir.1984) (per curiam). Having scrutinized the episodes of ineptitude, neglect and deleterious conduct on the part of plaintiff's counsel, the Court is of the opinion that this case, lacking in merit and brought in bad faith, satisfies the requirements set forth in *Christianburg Garment*. Although the case never reached a trial on the merits, its procedural history presents ample circumstantial evidence to support the Court's view.

■ First, it is of some moment that prior to filing this claim, plaintiff filed two written charges of discrimination with the Equal Employment Opportunity Commission naming defendant as respondent. After a review of the case, the EEOC determined that there was "no reasonable cause" for plaintiff's claims, both of which are the subject matter of this lawsuit. Notwithstanding that these determinations in and of themselves are insufficient to establish a lack of merit in the case, the Court gives the findings of the EEOC appropriate weight in its own analysis of the merits of plaintiff's claims.

■ Next, the Court notes that this case was originally brought as a class action on May 8, 1978. Plaintiff engaged in no discovery regarding his class allegations, filed no motions or memorandum of law in support thereof, and never moved for certification. Moreover, when defendant moved to strike the class allegation some eighteen months after the lawsuit was filed, plaintiff filed no brief in opposition and abandoned his class action claim when it came to hearing. This failure to support the class allegations in any fashion clearly indicates to this Court that the class claim, used perhaps as a tool to extract a settlement from the defendant, was without merit and brought in bad faith. Rule 11 of the Federal Rules of Civil Procedure, which provides that the signature of an attorney on a pleading constitutes a certificate by the attorney that to the best of his knowledge, information and belief there is good ground to support the pleading, confers upon the Court the power to levy attorney's fees against a party in violation of the rule. That factor notwithstanding, plaintiff's maintenance of a blatantly frivolous class action claim for eighteen months which caused defendant needless discovery expenses is only the first instance of plaintiff's and plaintiff's counsel's inconsistent and incredulous assertions as to the merits of the claim.

In February of 1980, almost two years after the suit was filed, plaintiff began his first efforts at discovery when he served interrogatories upon defendant. In that same month, plaintiff's counsel missed docket call with no explanatory word to the Court. Albeit that subsequent motions to continue the case were granted, plaintiff

maintained her "not ready" stance even at the September, 1980 docket call and trial, then over two years since the case was initiated. The Court, alerted at that time to the dubious posture of plaintiff's case, dismissed the claim with prejudice for failure to prosecute.

Although successful on appeal, plaintiff's appellate history is reflective of a case failing in integrity. Plaintiff's appellate briefs were due December 15, 1980; yet not until December 24 did he, contending that his counsel had an illness of two months duration, file a motion to extend time. Notwithstanding the appellate court's generosity in granting the requested extension and giving plaintiff an additional month to prepare, no brief or other explanatory motions were filed until almost two weeks after the superseding deadline.

On remand, this Court ordered both counsel to file briefs with regard to the Fifth Circuit opinion. Plaintiff never complied. Nor did he comply with the docket control order setting July 28, 1982 as the deadline for filing the Joint Pretrial Order. This time, using the inadequacy of her own law office as the excuse, plaintiff's counsel filed no Joint Pretrial Order, prepared no exhibit list, and subpoenaed no witnesses to testify at trial despite having announced "ready" at the August, 1982 docket call. On the morning of trial, then over four years since the suit was filed, plaintiff's counsel proclaimed that she was unable to proceed to trial and sought yet another continuance. The record of this colloquy before the Court, which ended in a second dismissal of the case, is replete with plaintiff's counsel's inconsistencies. As a result, the Court is unclear whether plaintiff sought a continuance because her grandmother died the night before, because her law firm was inadequately staffed to properly prepare the case, or because she and her client could not agree on whether or not to proceed at all.[1] However, the Court

is clear that the inconsistencies in plaintiff's counsel's explanations and the refusal of plaintiff to proceed with any part of his claim at that time strongly reinforce the Court's finding that the entire claim was spurious and brought in bad faith.

While in accord with defendant's view regarding the merits of the claims as well as the shared responsibility between counsel and client, the Court feels constrained to differ with defendant as to the extent of attorney's fees properly assessed. Defendant seeks reimbursement of all attorney's fees. Plaintiff, who has had serial employment positions such as supply clerk, shipping clerk, and "house parent" in a home for boys, would undoubtedly be sentenced to a lifetime of financial ruin should the Court permit an award of over $70,000.00 to be levied against him. Plaintiff's counsel, a solo practitioner, could likewise be hard pressed to overcome such an indebtedness. Defendant, on the other hand, is a large corporation with a stable financial base.

■ As the Second Circuit pointed out, "because fee awards are at bottom an equitable matter, ... courts should not hesitate to take the relative wealth of the parties into account." *Faraci v. Hickey-Freeman Company, Inc.*, 607 F.2d 1025 (2nd Cir. 1979). This view is congruent with that of the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974),[2] the United States Supreme Court in *Christianburg Garment* and the legislative intent. The Court in *Christianburg Garment* cited favorably the description of the significance of the Senate debates by the Court of Appeals for the District of Columbia Circuit:

[From these debates] two purposes for § 706(k) emerge. First, Congress desired to "make it easier for the plaintiff of limited means to bring a meritorious suit" ... But second, and equally impor-

---

1. This is so because all three reasons were advanced.

2. In *Johnson,* the Court directs that when determining attorney's fees, consideration should in-

clude the awards "made in similar litigation within and without the court's circuit." *Johnson,* 488 F.2d at 719.

tant, Congress intended to "deter the bringing of lawsuits without foundation" by providing that the "prevailing party" —be it plaintiff or defendant—could obtain legal fees. *Grubbs v. Butz,* 179 U.S.App.D.C. 18, 20, 548 F.2d 973, 975. *Christianburg Garment,* 434 U.S. at 420, 98 S.Ct. at 699. Thus, taxing plaintiff and plaintiff's counsel with a limited amount of attorney's fees protects the innocent defendant from "burdensome litigation having no legal or factual basis" while at the same time avoiding the total financial incapacitation of plaintiff and his counsel.

After considering the facts of this case, its procedural history, the relative financial posture of the parties, and the relevant law,[3] the Court concludes that the sum of $10,000 should be levied against plaintiff and plaintiff's counsel, jointly and severally, as attorney's fees pursuant to 42 U.S.C. §§ 1988, 2000e–5(k).[4]

## II.

■ Next, defendant seeks $36,885.00 in attorney's fees pursuant to 28 U.S.C. § 1927. The movant has a different burden when seeking attorney's fees on the basis of this enactment which provides, in relevant part:

Any attorney ... admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Fifth Circuit has made clear that § 1927, being penal in nature, should be strictly construed so that only excess costs caused by plaintiff's attorney's vexatious behavior and consequent multiplication of the proceedings should be

tabulated. In no event should those fees amount to the total cost of the litigation. *Monk v. Roadway Express, Inc.,* 599 F.2d 1378 at 1382 (5th Cir.1979); *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287 at 1292 (5th Cir.1984) (per curiam).

■ Defendant compiled a list of activities and hours spent on those activities which it alleges are directly attributable to plaintiff's counsel's dilatory conduct. In so doing, defendant contends that:

(1) Of a total of $39,048.75 charged for services rendered during the preparation for the first district court trial, $1,705.00 of that amount was a direct result of the dilatory conduct of plaintiff's counsel;

(2) Of a total of $6,976.25 charged for services provided during the Fifth Circuit hearing, $6,976.25 of that amount was attributable to plaintiff's counsel's vexatious behavior;

(3) Of a total of $16,090.00 for legal services provided during the preparation for the second district court trial, $14,705.00 of that amount was caused by the unreasonable behavior of plaintiff's counsel;

(4) Of a total of $13,498.75 for services provided during the post-trial motions, all of that amount was directly attributable to plaintiff's counsel's dilatory tactics.

In *Rogers v. Kroger,* 669 F.2d 317 (5th Cir.1982), the Fifth Circuit, determining that both sides in this lawsuit had been responsible for delay, held for plaintiff while supporting an award of sanctions against plaintiff's counsel for dilatory conduct. On remand, this Court levied a total of $1,268.00 against plaintiff's counsel for sanctions for counsel's behavior at the instance of the first trial. Accordingly, the

---

**3.** The Court adopts defendant's unopposed analysis of the factors in *Johnson* as they apply to the facts in this case with the exception of factor 12, "awards in similar cases" as previously discussed.

**4.** This conclusion is also in keeping with *Equal Employment Opportunity Commission v. Data Point,* 457 F.Supp. at 62, the case cited by de-

fendant wherein over $60,000.00 in attorney's fees was levied against the EEOC. Needless to say, an award of that magnitude assessed against a governmental agency, "expert" in the area of civil rights, for bringing a frivolous claim, may be well justified and is distinguishable from the case at bar.

Court is of the view that defendant has been reasonably compensated for plaintiff's counsel's dilatory behavior pursuant to the first trial and declines to award the $1,705.00 requested for legal services rendered in preparation for that trial or the $6,976.25 requested for preparation of the Fifth Circuit hearing.

Defendant next asserts that greater than 90% of the legal services afforded during preparation for the second district court trial were caused by the vexatious behavior of plaintiff's counsel. The Court agrees. In its description of the legal services provided during that period, defendant lists such things as:

> Research regarding other Fifth Circuit cases regarding decision to reverse and remand and sanctions successfully imposed by District Court after remand; telephone conference with Judge Bue's clerk ... regarding placement on Docket; correspondence to Mr. Jim Johns advising of Fifth Circuit remand; research regarding District Court imposition of lesser sanctions and disposition of cases remanded from Fifth Circuit after dismissal by trial court ...

Most of these items are, in this Court's view, indicative of work done as a result of the vexatious and unreasonable acts of plaintiff's counsel. However, keeping in mind the relative financial posture of the parties, as well as the punitive nature of this type of award, the Court limits reimbursement for these items to $2,500.00.

Finally, defendant requests a total reimbursement in the amount of $13,498.75 for the legal services provided during the post-trial motion phase of the case. The Court concurs with defendant's analysis of plaintiff's counsel's professionally irresponsible behavior. During this time period, plaintiff, dismissed with prejudice for the second time for failing to prosecute this patently frivolous claim, impelled defendant to prepare for a second appeal. This appeal, too, was ultimately dismissed prior to a hearing as a result of plaintiff's counsel's persistent egregious conduct. Keeping in mind, however, the relative wealth of the parties, the Court limits defendant's award for attorney's fees to the amount of $4,000.00 for this phase of the lawsuit.

### Conclusion

Rarely has this Court been confronted with a case such as this one wherein a plaintiff and his counsel, prosecuting a spurious claim with such total arrogance and indifference to court procedures, cause the defendant to incur four years of needless inconvenience and expense. By promulgating the attorney's fees statutes, the legislature has provided the courts with a means by which such an abuse of the civil rights laws as well as of the courts' processes can be deterred. Accordingly, in keeping with that intent, plaintiff and his counsel, jointly and severally, are hereby ordered to pay defendant attorney's fees in the amount of $10,000.00 pursuant to 42 U.S.C. §§ 1988 and 2000e–5(k); plaintiff's counsel, Ms. Clementine Hannah, is additionally ordered to pay defendant attorney's fees in the amount of $6,500.00 pursuant to 28 U.S.C. § 1927.

It is so ORDERED.