**Ricky L. McCRORY, et al.**

v.

**RAPIDES REGIONAL MEDICAL CENTER.**

**Civ. A. No. 85–3078.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Jan. 27, 1986.

Gravel & Brady, Charles G. Gravel and Anna E. Dow, Alexandria, La., for plaintiffs.

Kullman, Inman, Bee & Downing, William F. Fanta, Sidney F. Lewis, V, and Elmer E. White, III, T.A., New Orleans, La., for defendant.

## RULING

LITTLE, District Judge.

Plaintiffs John Roshto and Ricky L. McCrory are both adult residents of Alexandria, Louisiana. Until 18 May and 11 June 1984 respectively plaintiffs were employed by defendant Rapides Regional Medical Center (Rapides)—Roshto as an emergency medical technician and McCrory as a paramedic. During their respective periods of employment both plaintiffs admit they were having extra-marital affairs with co-workers.

In September of 1984 plaintiffs filed charges with the Equal Employment Opportunity Commission (EEOC), alleging these extra-marital relationships created a conflict in religious beliefs with their supervisor, Gary Lemoine, which resulted in their discharge in violation of Title VII of the Civil Rights Act of 1964. Specifically, plaintiffs alleged that they had been unlawfully discriminated against because of their Baptist religion. Plaintiffs' claimed that Lemoine's professed religious beliefs proscribing such extra-marital relationships conflicted with their private right to have such relationships. For the record Lemoine stated that his concern with plaintiffs' actions centered on the disruptive effect the relationships were having on fellow workers, and not on plaintiffs' personal lives.

On 23 October 1985 plaintiffs filed the present action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 2000e, *et seq.* In their complaint plaintiffs raised three grounds for recovery: (1) that defendant discriminated against them because of their (the plaintiffs) religious beliefs; (2) defendant imposed its religious beliefs upon plaintiffs in violation of the first amendment of the United States Constitution; and (3) defendant interfered with their constitutional right to privacy. The matter is now before the Court on defendant's motion for summary judgment and to award attorney's fees.

978

I. Rule 56

"Summary judgment may be granted only if it appears from the pleadings, depositions, admissions and affidavits, considered in the light most favorable to the non-moving party, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Buchanan v. Stanships, Inc.*, 744 F.2d 1070, 1073 (5th Cir.1984). *See also, Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467–68, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). "Once the movant shows that no genuine issue of material fact exists, the opposing party must show that summary judgment is inappropriate by submitting opposing affidavits or other competent evidence presenting specific facts that establish that there is a genuine issue of material fact for trial." *Id.* "The opposing party may not rely on the pleadings alone." *Id.;* Fed.R.Civ.P. 56(e). "In ruling on the motion for summary judgment, the district court may consider only those allegations that would be admissible in evidence and are made on the personal knowledge of an affiant whose competence to testify on such matters is affirmatively stated in the affidavit." *Id.*

Defendant has submitted two affidavits in support of its motion. The first is by James T. Montgomery, Executive Vice President of Rapides, and attests to the fact that Rapides is a private non-profit corporation owned and run by private individuals. The second is by plaintiffs' supervisor, Gary Lemoine. Mr. Lemoine unequivocally states that he reprimanded plaintiffs concerning the disturbance their relationships were having on fellow workers. This fact is corroborated by plaintiffs' own statements in their EEOC complaints. Mr. Lemoine also states that *at no time* did plaintiffs indicate to him that their extra-marital relationships had *any* religious significance. Indeed plaintiffs have not pleaded that any such statements were made. In fact plaintiffs have not submitted any opposing proof whatsoever and defendant's affidavits stand uncontroverted.

The Court recognizes that summary judgment should be used cautiously in the disposition of an employment discrimination case. *Beard v. Annis,* 730 F.2d 741, 743 (11th Cir.1984). *See Hayden v. First National Bank of Mt. Pleasant, Texas,* 595 F.2d 994, 997 (5th Cir.1979). Nonetheless, summary judgment may be entered if the plaintiffs fail to raise any issue of fact indicative of discriminatory conduct by the defendant. *Beard,* 730 F.2d at 743–44. *See, Aquamina v. Eastern Airlines,* 644 F.2d 506, 508 (5th Cir.1981). Also, it is axiomatic that a defendant is entitled to summary judgment if it can prove that a plaintiff is not entitled to proceed with his suit as a matter of law.

II. Religious Discrimination Under Title VII

For purposes concerning this claim, the relevant portions of Title VII provide:

(a) It shall be an unlawful employment practice for an employer—

(1) to...discharge any individual...because of such individual's...religion....

42 U.S.C. § 2000e–2(a)(1).

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

■ In order to establish a prima facie case of religious discrimination under §§ 2000e–2(a)(1) and (j), a plaintiff must plead and prove that: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement. *Turpen v. Missouri-Kansas-Texas R. Co.,* 736 F.2d 1022, 1026 (5th Cir.1984);

*Brener v. Diagnostic Center Hosp.*, 671 F.2d 141, 144 (5th Cir.1982).

## A. Bona Fide Religious Belief

The Supreme Court has characterized a "religious" belief or practice entitled to constitutional or statutory protection as "not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living". *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1971). Not surprisingly, the Fifth Circuit also requires that a "religious" belief be something more than personal preference:

> Whether a belief is "religious" and thus deserving of some protection ... does not depend on whether the belief is true or false. Nor does it depend on whether the belief is reprehensible to the majority of society. Instead ... the "religious" nature of the belief depends on (1) whether the belief is based on a theory of "man's nature or his place in the Universe", (2) which is not merely a personal preference but has an institutional quality about it, and (3) which is sincere.

*Brown v. Dade Christian Schools, Inc.*, 556 F.2d 310, 324 (5th Cir.1977) (citations omitted). *See also, Church of God, etc. v. Amarillo Ind. School Dist.*, 511 F.Supp. 613, 616 (N.D.Tex.1981). This test must be applied to "*all* forms and aspects of religion, however eccentric". *Cooper v. Gen. Dynamics, Convair Aerospace Div.*, 533 F.2d 163, 168 (5th Cir.1976) (emphasis original).

Before discussing the merits of the case at bar, an enlightening opinion in this area can be found in *Brown v. Pena*, 441 F.Supp. 1382 (S.D.Fla.1977), *aff'd w/o opinion*, 589 F.2d 1113 (5th Cir.1979). In *Brown* the plaintiff claimed he had a "personal religious creed" in which the ingestion of "Kozy Kitten Cat Food" was a significant contributing factor "to his state of well-being". In denying the claim the court noted that throughout the published opinions in this area, personal moral preferences have been excluded from the charac-

terization of religious beliefs. 441 F.Supp. at 1385. It was held that plaintiff's "personal religious creed" concerning Kozy Kitten Cat Food was nothing more than an example of a mere personal preference and beyond the parameters of the concept of religion as protected by the Constitution or Title VII. *Id.*

With regard to the present case, plaintiffs have alleged that they were discharged because their having extra-marital affairs was in opposition to their employer's religious beliefs. Undoubtedly, this allegation misses the point of Title VII. 42 U.S.C. § 2000e–2(a)(1) is couched in terms of an imposition on an *individual* plaintiff's religious beliefs, not the employer's beliefs. In essence then, plaintiffs' claims translate into a cause of action under Title VII if, and only if, their belief in their right to commit adultery is a "religious belief" subject to protection. The Court cannot make such a finding. Defendant has requested, and the Court so does, take judicial notice of the fact that the Baptist faith embraces the Holy Bible including the Ten Commandments—one of which states: "Thou shalt not commit adultery". This being so it would be more than absurd to find that the Baptist faith condones the commission of adultery, much less embraces such a notion as a deep-seated institutional standard. The Court is convinced that plaintiffs could not assert such a thing with even the slightest hint of sincerity.

## B. Notice and Discipline

It is not disputed that plaintiffs were fired. This fact, however, is the only one that supports their prima facie case. As stated above, it is uncontroverted that plaintiffs did not inform their employer of any religious belief involved with their committing adultery. Accordingly, the EEOC was correct in denying plaintiffs' claims. Plaintiffs have made no rational or reasonable argument on the law or facts which would enable them to defeat the

motion for summary judgment with regard to the Title VII claim.

## III. Constitutional Claims

■ Plaintiffs have also alleged that their first amendment rights and penumbral rights to privacy have been violated by defendant's actions. Specifically, plaintiffs assert that their right to assemble privately with whomever they wish and their right to hold separate "religious beliefs" have been trod upon by defendant's opposition to their adulterous relationships. The Court finds these claims totally unreasonable and unmeritorious.

■ The guarantees of the constitution run against the federal government *ex proprio vigore* and the states through the fourteenth amendment. No federal agency is a party to this suit. Therefore, plaintiffs may recover only if their rights are violated by conduct that may be fairly characterized as "state action". *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Mere private action, no matter how discriminatory or wrongful, does not give rise to a constitutionally based cause of action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1984); *Shelly v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *Frazier v. Board of Trustees of Northwest Mississippi*, 765 F.2d 1278, 1283 (5th Cir. 1985).

■ A private hospital is subject to the provisions of the first and fourteenth amendments only if its activities are significantly affected or intertwined with state action. *E.g., Madry v. Sorel*, 558 F.2d 303, 304 (5th Cir.1977); *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873 (5th Cir. 1975), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975). *Cf. Frazier*, 765 F.2d at 1288. Plaintiffs contend that because Rapides is subject to certain federal and state regulation and accepts payments through the Medicare and Medicaid system that its functions should be characterized as "state" functions. Plaintiffs also point to the fact that Rapides financed new facility construction in 1972 with funds guaranteed by the United States Government pursuant to the Hill-Burton Act, 42 U.S.C. § 291j–1(a)(1). *See Rapides General Hospital v. Matthews*, 435 F.Supp. 384 (W.D.La.1977). The Court is not impressed.

■ In this case the actions complained of were taken by a hospital which is privately owned and operated, but which in many financial particulars of its business is subject to federal and state regulation and services reimbursement systems. The mere fact that a business is subject to federal or state regulation does not by itself convert its action into that of the State of Louisiana for purposes of the first or fourteenth amendments. *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 350, 95 S.Ct. at 453, 42 L.Ed.2d at 483. Similarly, the mere fact that a hospital receives some or substantial local or federal financial support is not sufficient to subject the acts of that business to the restraints of the first and fourteenth amendments. *Madry*, 558 F.2d at 305; *Greco*, 513 F.2d at 876 n. 3. *See also, Frazier*, 765 F.2d at 1288 (private respiratory therapy company not subject to § 1983). The test of whether a hospital is involved in "state action" depends on whether a symbiotic relationship between the hospital and the state exists—that is, whether there exists a sufficiently close nexus between the state and hospital so that the state plays some meaningful role in the mechanism leading to the disputed act. *Frazier*, 765 at 1288; *Madry*, 558 F.2d at 304.

Here it is undisputed that all decisions concerning operation of the hospital are made exclusively by the hospital staff or the Board of Trustees and are free of government involvement. Thus, this case "amounts to no more than a private employer's internal decision over the composition of its staff", and cannot support a claim of constitutional magnitude. *Frazier*, 765 F.2d at 1284.

## IV. Rule 11 Sanctions and Attorney's Fees

Defendant has also requested attorney's fees under the applicable provisions of Title VII and Fed.R.Civ.P. 11.

> In part, 42 U.S.C. § 2000e–5(k) provides: In any action or proceeding under this subchapter the court, in its discretion may allow the prevailing party...a reasonable attorney's fee as part of the costs....

Rule 11 of the Federal Rules of Civil Procedure states:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, ... *The signature of an attorney or party constitutes a certificate by him* that he has read the pleading, motion, or other paper, that *to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause delay or needless increase in the cost of litigation. (emphasis supplied).

The plaintiffs have failed to file any response to defendant's demands.

### A. Title VII

"[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); *Beard v. Annis,* 730 F.2d 741, 745 (11th Cir.1984). The congressional intent in permitting this type of award was "to protect defendants from burdensome litigation having no legal or factual basis". *Christianburg Garment,* 434 U.S. at 420, 98 S.Ct. at 700, 54 L.Ed.2d at 656. *See also, Rogers v. Kroger,* 586 F.Supp. 597, 599 (S.D.Tex.1984).

It is important to note, however, that a district court must resist "the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation". *Christianburg Garment,* 434 U.S. at 421–22, 98 S.Ct. at 700, 54 L.Ed.2d at 657. To assess "attorney's fees against plaintiffs simply because they do not finally prevail...would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII". *Id.*

Defendant is entitled to attorney's fees. The plaintiffs filed their EEOC complaints in September of 1984. When their claims were denied on 22 July 1985 they should have been aware of the fact that their claims might be flawed. They obtained counsel and filed an appeal to this Court two months later. The present motion was filed approximately six weeks after that. Certainly this period of approximately three and one-half months afforded plaintiffs and their attorney ample time to investigate further and substantiate their position. Even the most cursory inquiry into the facts and law of this case would show the claims to be frivolous and unreasonable. A simple phone call would have uncovered the fact that defendant's decision-making processes are entirely private and independent of state interference. A short walk through the published reporters shows that the law in this area is not unclear and not in plaintiffs' favor. Nonetheless, plaintiffs' counsel filed this suit and then perpetuated the issue by filing an opposition and a supplemental memorandum in opposition to defendant's motion. Plaintiffs' first memorandum was replete with conclusory statements unsupported by the law, and the sole authority cited in connection with their constitutional claims was inapposite to their position. Plaintiffs cited *Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir.1983) for the proposition that a private employer cannot interfere with its employee's right to privacy. The

employer in *Thorne* was not a private party but a governmental unit—the city police force. In their supplemental memorandum, plaintiffs seemingly try to correct their faux pas by stating *Thorne* affords them solace if Rapides is found to be an alter ego of the state. They then try and support this position with the fact that Rapides utilized a federally guaranteed loan to fund some construction. Obviously plaintiffs' counsel has not read *Madry* and *Greco.* The law cannot be any more clear in this situation. Defendant is not an arm of the state and *Thorne* does not apply. This latest ineptitude merely highlights the unreasonableness of plaintiffs' constitutional Title VII claims.

### B. Rule 11

▇ In discussing the application of Rule 11 sanctions in this circuit the following quote is appropriate:

> The comments to the 1983 amendments to Rule 11 state that the rule "stresses the need for some prefiling inquiry into both the facts and the law. The standard is one of reasonableness under the circumstances". Moreover, the comments to the amendments instruct, "This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." The comments emphasize that while the amendments are "not intended to chill an attorney's enthusiasm or creativity", the district court's determination to impose sanctions may depend on "whether the pleading, motion, or other paper was based on a *plausible view* of the law".

*Davis v. Veslan Enterprises,* 765 F.2d 494, 497–98 (5th Cir.1985) (footnotes omitted) (emphasis original). Correspondingly, where a pleading is not based on a plausible view of the law and is patently unmeritorious, sanctions are appropriate. *See generally,* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 190 (1985). As discussed

above, the Court has found plaintiffs' position to be unreasonable and not based on a plausible view of the law. Defendant has made a proper motion for summary judgment accompanied by compelling affidavits. Plaintiffs have not brought to light one shred of evidence to support their position. "There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them...". *Fontenot, etc. v. Upjohn Co.,* 780 F.2d 1190, 1195–96 (5th Cir.1986). Moreover, no legal argument has been, or, in our view could be, presented to show plaintiffs' claims to be proper under existing or a good faith extension, modification, or reversal of existing law. To the Court it is clear that plaintiffs' counsel did not "stop, think, and investigate" before filing this action. *See* Rothschild, Fenton and Swanson, *Rule 11: Stop, Think, and Investigate,* Vol. II No. 2 Litigation 13 (Winter 1985). Even if counsel for plaintiffs argued that an investigation was conducted, it is manifest, given the legal guidelines in this area that must frame such an investigation, that any investigation was not reasonable. Under these circumstances the slightest inquiry into the law would have revealed glaring defects in plaintiffs' case.

▇ "When there is no objective basis for an attorney's belief that a [pleading] is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, then the Court should impose sanctions under Rule 11." *Woodfork by and through Houston v. Gavin,* 105 F.R.D. 100, 105 (N.D.Miss.1985). *Accord, Weir v. Lehman Newspapers, Inc.,* 105 F.R.D. 574, 576 (D.Colo.1985); *Wells v. Oppenheimer & Co.,* 101 F.R.D. 358 (S.D.N.Y. 1984). *See also,* Schwarzer, *supra* at 195 (the Court need not delve into the attorney's subjective intent. The record in the case and all of the surrounding circumstances should afford an adequate basis). The award of attorney's fees having been amply demonstrated, the Court now also awards costs as an appropriate sanction.

## C. Assessment of Fees and Costs

There is no statutory authority for an assessment of fees against counsel in a Title VII case. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 915 (11th Cir. 1982). *See also, Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Reed v. Sisters of Charity, etc.*, 447 F.Supp. 309, 319–20 (W.D.La.1978). Fees and costs may be assessed against counsel or a represented party or both under Rule 11. Fed.R.Civ.P. 11. Having found violations of both Title VII and Rule 11, the Court finds that attorney's fees and costs will be assessed *in solido* against both plaintiffs and their counsel.

## V. Conclusion

Defendant's motion for summary judgment is GRANTED. An appropriate judgment shall issue. Further, the Court finds that attorney's fees and costs should be awarded to defendant pursuant to 42 U.S.C. § 2000e–5(k) and Fed.R.Civ.P. 11. No hearing on this award is required. *Davis*, 765 F.2d at 500 n. 12. Nor is a detailed analysis mandated. *Id.* Yet, in all fairness, the Court finds the appropriate procedure in this instance is to ask for affidavits from defendant's counsel setting forth in detail the time and expenses attributable to this action to be submitted in ten (10) days. Counsel should also submit an affidavit setting forth the prevailing hourly rate in the community for this type of work. Plaintiffs shall have ten (10) days after the defendant's affidavits are submitted to respond.